**WO** LMH

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Randall L. Hartman,<br><br>    Plaintiff,<br><br>vs.<br><br>Joseph Arpaio, individually and in his official capacity as Maricopa County Sheriff,<br><br>    Defendant. | No. CV-04-2781-PHX-DGC (LOA)<br><br>**ORDER** |

Plaintiff Randall Hartman, a former Maricopa County jail inmate, brought this civil rights action pursuant to 42 U.S.C. § 1983. Dkt. #1. The parties have cross-moved for summary judgment. Dkt. ##48-50, 53-55, 58. For the reasons set forth below, the Court will deny summary judgment with respect to Count I of the complaint and grant summary judgment in Defendant's favor with respect to Counts II and III.

**I.    Procedural History.**

Plaintiff was an inmate at Durango Jail from September 2004 until February 2005. Plaintiff alleges in his verified complaint that while confined at Durango Jail he was subjected to overcrowding, unsanitary conditions, and inadequate meals in violation of the Eighth Amendment to the United States Constitution. Dkt. #1. The Court screened the complaint and concluded that it adequately states claims for relief.   Dkt. #4.

Defendant moved to dismiss the complaint for lack of exhaustion. Dkt. #10. The Court denied the motion without prejudice, and Defendant subsequently filed an answer to

the complaint. Dkt. ##18, 20.

Defendant argues in his motion for summary judgment that (1) the overcrowding claim fails because Plaintiff did not suffer any physical injury, (2) the sanitation claim fails because the conditions did not violate the Eighth Amendment, and (3) the inadequate meals claim fails because Plaintiff has presented no evidence that the meals were not nutritionally adequate or that Defendant Arpaio was deliberately indifferent. Dkt. #50. Plaintiff has cross-moved for summary judgment on the overcrowding claim, alleging in part that for nearly six months he was confined with three other inmates in a cell designed to hold only two inmates and that his housing unit held three times the number of inmates it was designed to hold. Dkt. ##53-55; see Dkt. #1. Plaintiff also has responded that there are genuine issues of material fact on the sanitation and inadequate meals claims. Dkt. ##53-54. Specifically, he argues that cleaning the jail only twice-per-day was not sufficiently sanitary and that the meals caused gastrointestinal distress. *Id.* Defendant counters that there is no evidence that the overcrowding or sanitation caused physical injury, and that a registered dietician ensures that meals are nutritionally adequate. Dkt. #58.

**II.      Legal Standards.**

   **A.      Summary Judgment.**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

Rule 56(c) mandates the entry of summary judgment against a party who, after adequate time for discovery, fails to make a showing sufficient to establish the existence of

1    an element essential to that party's case and on which the party will bear the burden of proof
2    at trial. See Celotex, 477 U.S. at 322-23. In such a situation, there can be no genuine issue
3    of material fact, since a complete failure of proof concerning an essential element of a
4    nonmoving party's case necessarily renders all other facts immaterial. Id.

5    **B.    Eighth Amendment.**

6    The parties do not dispute that the Eighth Amendment applies to this action. Under
7    the Eighth Amendment, punishment may not be "barbarous," nor may it contravene
8    society's "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 346 (1981).
9    Only deprivations denying the minimal civilized measure of life's necessities are sufficiently
10   grave for an Eighth Amendment violation. See Johnson v. Lewis, 217 F.3d 726, 731 (9th
11   Cir. 2000) (quotation omitted). These are deprivations of essential food, medical care,
12   sanitation, or personal safety. See Rhodes, 452 U.S. at 348. To determine whether a
13   violation has occurred, a court should consider the circumstances, nature, and duration of a
14   deprivation of these necessities. See Johnson, 217 F.3d at 731. "The more basic the need,
15   the shorter the time it can be withheld." Hoptowit v. Ray, 682 F.2d 1287, 1259 (9th Cir.
16   1982); see Hutto v. Finney, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and
17   a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or
18   months.").

19   An Eighth Amendment claim also requires that the defendant have a sufficiently
20   culpable state of mind, known as "deliberate indifference." See Farmer v. Brennan, 511 U.S.
21   825, 834 (1994). To act with deliberate indifference, a prison official must both know of and
22   disregard an excessive risk to inmate health; the official must both be aware of facts from
23   which the inference could be drawn that a substantial risk of serious harm exists and he must
24   also draw the inference. See id. at 837.

25   **III.   Analysis.**

26   **A.    Count I: Overcrowding.**

27   The Supreme Court and Ninth Circuit have made clear that overcrowding alone is not
28   a violation of the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 345-350 (1981);

- 3 -

1  Hoptowit, 682 F.2d at 1249.[1]  But overcrowding may result in circumstances that do rise to
2  the level of Eighth Amendment violations.  The Ninth Circuit has recognized "increased
3  violence" as one example of an Eighth Amendment violation that might result from
4  overcrowding.  Id.  The Supreme Court and Ninth Circuit have made clear, however, that the
5  increase in violence must be caused by the overcrowding, not merely by an increase in the
6  prison's population.  Rhodes, 452 U.S. at 348-349; Hoptowit, 682 F.2d at 1249.

7  Defendant relies primarily on the argument that Plaintiff's claim fails to meet the
8  "physical injury" requirement of 42 U.S.C. § 1997e(e).  Dkt. #58 at 3-4.  But the Ninth
9  Circuit has held that this statute does not bar claims for compensatory and punitive damages
10 based on constitutional violations.  Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002).
11 Plaintiff seeks to recover such damages in this case.  Dkt. #1 at 4, 7.

12 Defendant does argue that "plaintiff has made no allegations, nor does the record
13 reflect, that the extent or the effect of the overcrowding are such that they rise to the level of
14 constituting wanton and unnecessary infliction of pain."  Dkt. #50 at 3.  The question the
15 Court must answer in ruling on Defendant's motion, then, is whether Plaintiff has produced
16 sufficient evidence for a reasonable jury to conclude that Plaintiff was exposed to violence
17 or other unconstitutional effects as a result of overcrowding at Defendant's facility.  As noted
18 above, in making this decision, the Court must believe Plaintiff's evidence and draw all
19 justifiable inferences in his favor.  Anderson, 477 U.S. at 248.

20 Plaintiff's verified complaint contains the following factual allegations:

21 In a housing unit designed to hold 32 inmates, with each cell set up for 2 people, it now houses 100+ inmates.  Each cell has 4 bunks with absolutely
22 no room to move around.  Out in the day room, there are a dozen more bunk-beds, as well as floor Boat beds.  This makes it impossible to move around
23 without tripping over someone or bumping into somebody or just being in someone else's way.

24
   . . . There [are] only 2 toilets, 1 urinal, 2 showers & 2 sinks to be used
25 by the 100+ inmates!  People are forced to stand in line to take a shower, or use the bathroom, or even get a drink of water!
26

27
   ―――――――――
28 [1]Defendant cites Finocchi v. Department of Corrections, 972 F.2d 1338 (9th Cir. 1992), in support of this proposition.  Finocchi is an unpublished disposition that may not be cited to the courts of this Circuit.  See Ninth Cir. R. 36-3.

> Inmates are tense & tempers flair.  There are fights all the time just because someone is "in the way" or somebody cuts into line because they don't wish to wait any longer.
>
> I'm in fear for my life on a daily basis, expecting to be jumped or beaten down because I bumped into somebody or looked at someone the wrong way.

Dkt. #1 at 4.[2]  Defendant's affidavit submitted as part of the summary judgment briefing adds the following allegation: "Due to the overcrowding conditions, tension was high and fights occurred constantly."  Dkt. #55 at 5.

Defendant's motion does not dispute any of these facts.  Defendant makes no factual assertions whatsoever concerning overcrowded conditions at the jail and Plaintiff's sworn assertions that fights, tension, and fear resulted from the overcrowding.  Viewing this evidence in the light most favorable to Plaintiff, the Court concludes that Plaintiff has raised a question of fact concerning whether overcrowding at the jail results in violence and dangerous conditions sufficient to create an Eighth Amendment violation.

The Court is fully cognizant of the fact that "the Eighth Amendment does not reflect what any of us in the judicial branch might believe to be desirable, but rather requires a mere minimum standard of life's necessities."  Hoptowit, 682 F.2d at 1249.  In the absence of any factual response from Defendant, however, and viewing the evidence in Plaintiff's favor, the Court concludes that Plaintiff has provided sufficient evidence to defeat Defendant's motion for summary judgment on Count I.

The Court will deny Plaintiff's cross-motion for summary judgment because he has not shown that Defendant was deliberately indifferent to the overcrowded conditions at Durango Jail.  See Farmer, 511 U.S. at 834; see also Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.").

---

[2] These factual allegations are not repeated in detail in Plaintiff's response to Defendant's motion for summary judgment.  But because they are verified and Plaintiff is proceeding *pro se*, the Court will consider these sworn assertions as facts Plaintiff would assert at trial.

**B.	Count II: Sanitation.**

Plaintiff asserts that after each of the two meals, inmates were provided with bleach and water to clean the bathroom and floors, which he did not believe was sufficient for 100 inmates. He also asserts that inmates sat on the floor or on their bunks to eat. Plaintiff believes that the unsanitary conditions caused him to constantly suffer a cold or the flu, and he has also been nauseous. Dkt. ##1 at 4, 55 ¶¶ 6-8. These allegations are supported by Plaintiff's deposition testimony. Dkt. #49 Ex. A at 10-11.

Defendant submitted evidence that during the five months that Plaintiff was in custody, the only medical requests he made were for a sore throat on December 5, 2004, and a broken tooth on December 18, 2004. He cancelled his request for treatment for the broken tooth. Dkt. #49 ¶¶ 6-7 & Ex. B ¶¶ 4-6. Plaintiff testified at his deposition that he made a couple of medical requests and only was given Tylenol or Tums. Dkt. #49 Ex. A. When Plaintiff was transferred to the state prison from the jail, he underwent a complete medical examination. He complained of an upset stomach and problems with his teeth, but was not referred for treatment. Dkt. #49, Ex. A at 12. Plaintiff argues that he is not an expert on the efficacy of bleach water as a cleanser, but he believes that separate cleaning materials are needed to avoid cross-contamination between bathrooms and living areas. Dkt. #53 at 3.

Conditions that do not violate contemporary standards of decency do not transgress the Eighth Amendment. See Rhodes, 452 U.S. at 347. "The Constitution does not mandate comfortable prisons." Id. at 349. But subjecting a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain that violates the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995).

On this record, it is undisputed that the living and bathroom areas were cleaned with bleach and water after each meal, twice each day. Being forced to eat while sitting on a bed is not unconstitutional. While there is some evidence that Plaintiff suffered colds and flu while in custody, there is no evidence to show that these ailments were caused by unclean floors. On this record, there is insufficient evidence to show that there is a disputed issue of material fact regarding sanitation. The Court will grant summary judgment in favor of

1 Defendant on this claim.

2     **C.    Count III: Meals.**

3     Plaintiff asserts that the two daily meals are mostly starch and have no nutritional value. The morning meal at 8 a.m. consisted of two small sandwiches, a piece of fruit, and a half pint of milk, roughly totaling 1000 calories. The evening meal at 8 p.m. was usually potatoes, gravy from leftovers, a vegetable, a small donut, a piece of bread, and a small cup of Kool-Aid, totaling 1200-1400 calories. Dinner was often served cold or undercooked. Plaintiff could buy snacks like chips and candy bars from the canteen, but these items lacked nutritional value. Plaintiff often suffered headaches and stomach pains from hunger, and he was ill from undercooked food. Dkt. #1 at 6, 55 ¶¶ 9-10, 49 Ex. A at 15-19. He weighed 245 pounds when he entered the jail and weighed the same when he left. Dkt. #49 Ex. A at 18. He did not request medical attention for ailments from the food. Id. at 19.

    Defendant does not dispute that meals were served twice per day. Defendant submitted the affidavit of Kundavaram Reddy, a registered dietician with the Maricopa County Sheriff's Office. Dkt. #49 Ex. C ¶ 1. Reddy prepares the monthly menus and annual menu analysis to track calories and nutritional content. Id. ¶ 5. Reddy attests that for the sedentary and light activity of male jail inmates, 2400 to 2500 calories meets the U.S. Recommended Dietary Reference Intake. Id. ¶ 9. The average daily calories served during the time Plaintiff was in custody was 2500, and the breakdown was 15% protein, 59% carbohydrates, and 26% fat. Id. ¶¶ 12.[3] Based on this evidence, Defendant contends that the food is nutritionally adequate.

    The Eighth Amendment requires that prisoners be served food that is adequate to maintain health. There is no requirement that the food be tasty or aesthetically pleasing. See LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). Food that is served cold or that sometimes contains foreign objects satisfies the Constitution. See id. at 1456 (citations and quotations omitted). It is undisputed that Plaintiff weighed the same when he entered and

---

[3]There are two paragraphs in the affidavit labeled as "12." The reference is to both of them.

left the jail. Defendant has submitted evidence that the menus are planned by a dietician to meet national standards. To rebut this evidence, Plaintiff has offered only his own belief that the food did not satisfy nutritional standards, but he has also admitted that he supplemented his diet with food from the prison store. Also, there is no evidence that any illness he suffered from the food was anything other than infrequent and mild. There is no evidence that he requested medical attention due to hunger or food unfit for consumption. Based on this record, there is no evidence to show that a material issue of fact exists regarding the nutritional adequacy of the food. The Court will grant summary judgment in favor of Defendant on this claim.

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Dkt. #48) is **granted in part** and **denied in part** as set forth in this order.

2. Plaintiff's cross-motion for summary judgment (Dkt. #54) is **denied**.

3. The case is **referred** to Magistrate Judge Lawrence Anderson for further proceedings.

DATED this 13th day of February, 2007.

David G. Campbell
United States District Judge